**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
(Western Division at Cincinnati)**

| | |
|---|---|
| **ERIK KOHLER** | : |
| *On behalf of himself* | |
| *all others similarly situated* | : |
| c/o Thomas Bruns, Esq. | |
| 4750 Ashwood Dr., Ste. 200 | : |
| Cincinnati, Ohio 45202 | |
| | : |
| Plaintiff | |
| | : |
| v. | |
| | : |
| **CITY OF CINCINNATI** | |
| c/o Andrew W. Garth, Acting City Solicitor | : |
| 801 Plum St., Suite 214 | |
| Cincinnati, OH 45202 | : |
| | |
| and | : |
| | |
| **MAYOR JOHN CRANLEY** | : |
| 801 Plum Street, Suite 150 | |
| Cincinnati, Ohio 45202 | : |
| In his official and individual capacities | |
| | : |
| and | |
| | : |
| **UNITED STATES OF AMERICA** | |
| c/o Civil Process Clerk | : |
| U.S. Attorney's Office, Southern District | |
| Of Ohio | : |
| 303 Marconi Boulevard, Suite 200 | |
| Columbus, OH 43215 | : |
| And Hon. William Barr | |
| United States Attorney General | : |
| U.S. Department of Justice | |
| 950 Pennsylvania Avenue, NW | : |
| Washington, DC 20530-0001 | |
| | : |
| Defendants | |
| | : |

<u>**PLAINTIFF'S VERIFIED CLASS ACTION COMPLAINT FOR DECLARATORY
RELIEF, INJUNCTIVE RELIEF AND, AS AGAINST THE CITY OF CINCINNATI,
FOR DAMAGES**</u>

**Introduction**

1.      Among other things, this action seeks to obtain declaratory and injunctive relief relating to two different consent decrees entered into by the City of Cincinnati which are now decades old.  One of the consent decrees was entered into with the United States as a result of a proceeding in Federal Court, and the other in state court.  As against the City of Cincinnati, the named Plaintiff is seeking money damages as well.  With the passage of time, and now in violation of the Constitution, both consent decrees actually require ongoing race-based discrimination in hiring and promotions.  Specifically, with the passage of 40 years (in one case), and 33 years (in the other), neither consent decree satisfies strict scrutiny and the requirements of *Detroit Police Officers Assn v. Young*, 989 F.2d 225 (1993) and *Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737, 738-739 (6th Cir. 2012).

**Parties**

2.      Plaintiff, Eric Kohler is and at all times relevant hereto has been a resident of the State of Ohio and City of Cincinnati.  He is and has been duly employed by the City of Cincinnati as a police officer.  He is white, male, and was not even born when the complained of discrimination by the City of Cincinnati, which prompted the US consent decree, purportedly occurred.

3.      Defendant, the City of Cincinnati, is a duly chartered municipality and city within the State of Ohio and, in that capacity, maintains a police department.

4.      Defendant, Mayor John Cranley, is the duly elected Mayor of the City of Cincinnati and, in part, has oversight, control, and supervision over the actions complained of herein.

5.      Defendant, the United States of America, is a sovereign nation and is named as a party defendant as it was a party to the 1980 Consent Order that, in part, is challenged in this action.

**JURISDICTION AND VENUE**

6.     Subject matter jurisdiction over the claims and causes of action asserted by Plaintiffs in this action is conferred on this Court pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, 28 U.S.C. §1331, 28 U.S.C. § 1343, 28 U.S.C. §§ 2201 and 2202, and other applicable law.

7.     Venue in this District and division is proper pursuant to 28 U.S.C. §1391 and other applicable law, because much of the deprivations of Plaintiff's Constitutional Rights occurred in counties within this District within Ohio, and future deprivations of Constitutional Rights are threatened and likely to occur in this District.

**FACTS COMMON TO ALL CLAIMS**

The 1980's Consent Decrees

8.     Over 40 years ago, in 1980, and before the named Plaintiff was even born, the City of Cincinnati and the United States entered into a certain Consent Decree styled *United States of America v. City of Cincinnati, et. al.*, SDOH Case No. C-1-80-369 (hereinafter the "U.S. Consent Decree"). A true and accurate copy of which is attached hereto as Exhibit 1.

9.     Among other things, the U.S. Consent Decree was potentially perpetual because, while it had the ability to be lifted by the City of Cincinnati under Paragraph 9 with notice to the Department of Justice after five years, it could only be lifted if the Department agreed to it. And, as evidence of its potentially perpetual nature, 40 years later, the U.S. Consent Decree remains in force.

10.     Under Paragraph 2 of the U.S. Consent Decree, the City of Cincinnati agreed to maintain or exceed both race-based and sex-based criteria as follows: 34% of all new hires must be black, and 23% of all new hires must be women. Furthermore, for promotion to sergeant, blacks and women must comprise at least 25% of all such promotions.

11.    On September 14, 1987, the City of Cincinnati entered into another consent decree, this time in state court, related to promotions to Lieutenant, Captain, and Assistant Chief within the police department (hereinafter the "State Consent Decree"). A true and accurate copy of which is attached hereto as Exhibit 2.

12.    The State Consent Decree contains race-based and sex-based criteria, requiring 25% of the promotions to Lieutenant, Captain, and Assistant Chief to be women or black officers.

13.    Over 40 years have passed since the U.S. Consent Decree, and 33 years have passed since the State Consent Decree. In that time, the City of Cincinnati Police Department has undertaken a massive shift in demographics such that its employee makeup exceeds the targets contained in the consent decrees at issue.

14.    The City of Cincinnati does not discriminate against women and/or minorities in the hiring, training and promotion of those two groups.

15.    However, by continuing the consent decrees this long after entering into them, the City of Cincinnati does illegally discriminate against white males in hiring and promotions.

16.    Both the U.S. Consent Decree and State Consent Decree, and their continuation, are the result of conscious policymaking by, among other people, Mayor John Cranley, who has directed that no actions be taken to end their continuation. His directive has been followed to date. As such, both the U.S. Consent Decree and State Consent Decree, and the facially race-based and sex-based discrimination contained within them, constitute an official policy of the City of Cincinnati.

17.    Therefore, the violations of the Constitutional rights set forth herein have, as their moving force, these policies and customs. Thus, the City of Cincinnati has liability under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) for these violations.

4

18.     Evidence of the above is further demonstrated by the fact the current Chief of Police for the City of Cincinnati is black (and so was his immediate predecessor). The Assistant Chiefs of Police, of whom there are five, include two females, and one black male. Thus, minorities and women comprise 66.66% of the top two ranks of the Cincinnati Police Department.

19.     The City of Cincinnati actively recruits, tutors, encourages, and assists minority and women candidates in applying for and passing the entrance and relevant promotional examinations. Likewise, the City of Cincinnati demonstrates an awareness of, and commitment to, the need for diversity at all levels of city government.

20.     Neither the entrance or the promotional examinations or other processes involved in the entrance or promotional process administered by the City of Cincinnati discriminate against minorities or women.

21.      As a result, there has been a substantial increase in the percentage of minority and women uniformed police officers and supervisors in the City of Cincinnati since the U.S. Consent Decree and State Consent Decrees were entered. This increase is over and above the targets contained in the consent decrees.

22.     The increase in minority and female representation within the Cincinnati Police Department, combined with the presence of minority and female leadership in the City and in the Police Department itself, as well as the existence of organizations committed to increasing their participation in the police industry, have long-ago eliminated any long-term effects of the prior lack of minority and/or female representation in the department as to ongoing hiring and/or promotion decisions.

23.     The passage of time, more than 40 years since entering into the U.S. Consent Decree and 33 years for the State Consent Decree, also makes clear that due to age restrictions in the hiring

criteria of police officers, there cannot possibly be anyone eligible for hire or promotion from this date forward who was personally affected, positively or negatively, by any of the purported prior discrimination addressed by the original U.S. Consent Decree or State Consent Decree.

24.     This same passage of time ensures that there are no longer any employees in the Cincinnati Police Department who were employed there at the time the original consent decrees were put in place. Therefore, there are no current employees in the department who have been either positively or negatively affected by any prior discrimination as alleged in the original cases.

25.     As a result of the above, there have been no challenges to the most recent entrance examinations or promotional examinations given by the City of Cincinnati, where such challenges suggest any institutional racism or any racial or sex bias, nor have there been any such challenges in at least the last decade.

Facts Common to Eric Kohler

23.     Plaintiff, Eric Kohler, is employed by the City of Cincinnati, first via the Police Cadet program in 1999, and later as a sworn officer.

24.     When the City of Cincinnati intends to promote, it conducts a nondiscriminatory examination and eligibility list process that includes a written examination, an oral board and other steps. Those examinations are typically conducted in the spring, and the resulting promotional list lasts for approximately one year.

25.     Plaintiff took the nondiscriminatory examination for promotion to police sergeant in 2019, but scored too far down the list to be promoted in 2019.

26.     On March 5, 2020, the City of Cincinnati again administered its nondiscriminatory promotion examination for Police Sergeant and Plaintiff took it again.  The top 20 on that list scored as follows:[1]

| EXAM RANK | TOTAL SCORE | FIRST NAME | MIDDLE INITIAL | LAST NAME | CURRENT DEPARTMENT |
|---|---|---|---|---|---|
| 1 | 91.12 | WILLIAM | S | KINNEY | |
| 2 | 91.00 | CHRISTY | | BREHM | CPD |
| 3 | 90.52 | RYAN | W | PARKS | |
| 4 | 87.82 | JASON | | HUBBARD | |
| 5 | 87.57 | JASON | T | LINDSEY | CPD |
| 6 | 85.12 | BRENDON | C | ROCK | CPD |
| 7 | 84.88 | SCOTT | A | BRIANS | CPD |
| 8 | 84.77 | ERIC | | KOHLER | |
| 9 | 84.77 | CASEY | | KREIDER | CPD |
| 10 | 84.29 | JOHN | M | VAN DYNE | CPD |
| 11 | 84.28 | BRIAN | T | CARR | CPD |
| 12 | 84.26 | ROBERT | A | WHITE II | |
| 13 | 83.20 | ANDREW | T | SNAPE | CPD |
| 14 | 82.88 | JEFF | J | MEISTER | CPD |
| 15 | 82.40 | KRAIG | D | KUNZ | CPD |
| 16 | 81.59 | RYAN | M | JONES | |
| 17 | 80.65 | JOHN | F | DOTSON | |
| 18 | 80.18 | CHRISTOPHER | | SULTON | CPD |
| 19 | 79.48 | MARCUS | | SHERMAN JR | CPD |
| 20 | 79.47 | ERIC | A | KAMINSKY | CPD |

27.     As reflected on the above list, Plaintiff finished 8th for purposes of eligibility for promotion to Police Sergeant.  However, solely because of the 40-year-old U.S. Consent Decree, Robert White II, who happens to be black and who was 12th on the list, was promoted ahead of Plaintiff Kohler (and also ahead of Officers Kreider, Van Dyne and Carr).  This has and had the effect of denying Plaintiff seniority, preferential job assignments, and lost pay (both regular and detail pay).

---

[1] https://www.cincinnati-oh.gov/hr/eligible-lists1/promotional/police-sergeant-20-00035/ (last visited 10/26/2020).  The website reveals an October 15, 2020 approval date, but the list was actually approved before that, and changes made after the fact.

7

28.     In addition, Plaintiff Kohler intends and will test for Lieutenant when eligible next year. Thus, the State Consent Decree will or is likely to have a similar effect on him at that time.

### Class Allegations

29.     Plaintiff reincorporates the preceding paragraphs as if fully set forth herein.

30.     The actions and violations complained of herein affect dozens of police officers and applicants for employment every year, and the violations complained of will continue to affect officers and applicants.

31.     Pursuant to FRCP 23(a), (i) the class is so numerous that joinder of all members is impracticable (with at least 15, and up to 20 impacted employees per year); (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class.

32.     Pursuant to FRCP 23(b): (i) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and (ii) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

33.     The named Plaintiff seeks a Plaintiff class consisting, for injunctive relief purposes, of: (i) all white males, (ii) who applied for employment or promotions on or after one year preceding

the date of this Complaint, and (iii) who have been denied employment or denied or delayed promotion due to the race or sex-based quota system. For damages purposes, such class should consist of (i) all white males (ii) who applied for promotions, (iii) for the two years preceding this date of the filing of this Complaint and (iv) who have been denied or delayed promotion due to the facially discriminatory race-based and/or sex-based consent decrees.

### COUNT I – 42 USC 1983 – Equal Protection

34. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

35. The U.S. Consent Decree and State Consent Decree require the City of Cincinnati and Mayor Cranley to treat Plaintiff differently, and negatively, from other similarly situated persons due to the race and/or sex of such other persons. Further, this difference in treatment, which the City of Cincinnati actively carries out, is not supported by a sufficiently strong governmental interest.

36. Race-based discrimination is predicated on an immutable, protected characteristic, under which the court applies strict scrutiny. The court will uphold the policy only if it furthers a compelling governmental interest and is narrowly tailored in doing so. Here, the race-based classification and discrimination complained of no longer serves a compelling governmental interest and it is not narrowly tailored.

37. Gender-based discrimination is reviewed under intermediate scrutiny, in which the challenged discrimination must serve important governmental objectives and must be substantially related to achievement of those objectives. The gender-based discrimination herein no longer serves important governmental objectives and is not substantially related to achievement of any such objective.

38.     The aforementioned discrimination violates the Fourteenth Amendment's Equal Protection Clause, and violates clearly established rights as set forth in *Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737, 738-739 (6th Cir. 2012).

39.     The policy, practices and discrimination complained of have deprived Plaintiff of benefits and compensation, including, without limitation: (i) lost pay from the time that Officer White was promoted to Sergeant ahead of Plaintiff until that time that Plaintiff was promoted, estimated to be in the range of $640; (ii) lost overtime pay from the time that Officer White was promoted to Sergeant ahead of Plaintiff until that time that Plaintiff was promoted, estimated to be in the range of $240; and (iii) loss of seniority and other benefits stemming therefrom.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as prayed for, including:

A.  That this Court issue a declaration that the challenged orders, customs, and practices are unconstitutional;

B.  That this Court enter permanent injunctive relief to prohibit enforcement of the challenged orders, customs and practices;

C.  That this Court certify a class as provided in the Complaint;

D.  That Plaintiff be awarded compensatory damages against the City of Cincinnati and Mayor Cranley in the amount sought herein and to be proven at trial;

E.  That Plaintiff be awarded his costs in this action, including reasonable attorney fees under 42 U.S.C. § 1988; and

F.  Such other relief as this Court shall deem just and proper.

Respectfully submitted,


/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas B. Bruns_____
Thomas B. Bruns (0051212)
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890

**Attorneys for Plaintiff**

11



EXHIBIT

Exhibit 1

IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

UNITED STATES OF AMERICA, )
    )
        Plaintiff, )
    )
    ) CIVIL ACTION NO.
    v. )
    )
CITY OF CINCINNATI, OHIO; THE )
CINCINNATI POLICE DIVISION: )
ARTHUR F. HULL, JR., Chairman )
WILLIAM P. SHEEHAN, and RICHARD )
E. GUGGENHEIM, in their )
Capacities as Members of the )
Cincinnati Civil Service )
Commission, )
    )
        Defendants. )

C-1-80-369

| Indexed | |
|---|---|
| Docketed | |
| Journal | |
| Motion | |
| Issue | |
| Card | |

## CONSENT DECREE

The Plaintiff United States of America filed its
Complaint in this action against, _inter alia_, the City of
Cincinnati, alleging that the defendants are engaged in a
pattern or practice of discrimination in employment on the
basis of race and sex, in violation of Title VII of the Civil
Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et
sea., the nondiscrimination provisions of the Omnibus Crime
Control and Safe Streets Act of 1968, as amended, 42 U.S.C.
Section 3789d (c)(3) and the nondiscrimination provisions of
the State and Local Fiscal Assistance Act of 1972, as amended,
31 U.S.C. Section 1242.

The parties, being desirous of settling this action by
appropriate decree, agree to the jurisdiction of this Court
over the respective parties and subject matter of this action
and hereby waive the entry of findings of fact and conclusions
of law. The City of Cincinnati and its officials, sharing the
goal of insuring equal employment opportunity within the

3

Cincinnati Police Division and desiring to avoid protracted and unnecessary litigation, accept this Decree as final and binding among the parties signatory hereto as to the issues resolved herein, as well as on all persons who consent to the relief hereinafter provided. This Decree, being entered with the consent of the defendants, shall not constitute an admission, adjudication or finding on the merits of the case, and the defendants deny that any unlawful discrimination has occurred.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. The defendants, their officials, agents, employees and successors, and all persons in active concert or participation with them in the performance of police functions covered by the Complaint filed in this action are permanently enjoined from engaging in any act or practice which has the purpose or effect of discriminating against any black or female employee of, or any black or female applicant or potential applicant for, employment with the Cincinnati Police Division [hereinafter sometimes referred to as the CPD] because of such individual's race or sex. Specifically, the defendants shall not discriminate against any individual in hiring, promotion, assignment, upgrading, training, compensation, discipline or discharge in whole or in part because of such individual's race or sex.

Further, defendants shall not retaliate against or in any respect adversely affect any person because that person has opposed discriminatory policies or practices or because of that person's participation or cooperation with the initiation, investigation, litigation or administration of this Decree. Remedial actions and practices required by the terms of this Decree or permitted to effectuate and carry out programs under this Decree shall not constitute unlawful

discrimination within the meaning of 42 U.S.C. Section 2000e-2(a).

2. It is the purpose and intent of this Decree to insure that blacks and women are not disadvantaged by the hiring, promotion, assignment and other employment policies and practices of the CPD and that any disadvantage to blacks and women which may have resulted from past discrimination is remedied so that equal employment opportunity be provided to all. The defendants have agreed that in determining whether compliance has been achieved, an appropriate standard of comparision is the proportion of qualified blacks and women in the labor force of the City of Cincinnati and have agreed to undertake as the long term goal of this Decree, subject to the availability of qualified applicants, approximating that proportion of blacks and women in all the sworn ranks of the CPD.

In meeting this long term goal, the defendants adopt the interim goals set out below, on an annual basis, in filling vacancies within the sworn ranks of the CPD:

A. It is recognized that the CPD has recently made substantial efforts to increase the representation of blacks and women in the sworn entry rank of police officer, which are reflected in the thirty-four (34) percent black and twenty-three (23) percent female composition of the 1980 Police Recruit List. Defendants agree to continue such recruitment efforts and to adopt, as an interim measure, the goal of hiring qualified black and female officers in at least the percentages which they are represented on the 1980 Police Recruit List. For purposes of determining compliance with this interim goal, persons who fail to complete probation shall not be counted as having been appointed, and a black female maybe counted as both black and female.

B. For the sworn promotional positions of police

specialist and sergeant, the interim goal shall be to fill vacancies in an affirmative manner so that at the termination of this Decree, blacks and women will hold a percentage of these positions equal to or exceeding the percentage of blacks and women in the pool of candidates eligible for such positions. This goal shall be deemed to have been met if in any certification to fill these positions, twenty-five (25) percent of the positions are filled with blacks and women in proportion to their relative representation in the pool eligible for such positions. Three years from the entry of this Decree, the parties shall meet to determine whether adjustment of this interim goal is necessary for achievement of the long term goals of this Decree.

C.  For all other promotional positions, the interim goal shall be to fill vacancies with qualified black and female applicants in proportion to their representation in the applicant pool for the particular position.

However, nothing herein shall be interpreted as requiring defendants to hire unnecessary personnel, or to hire, transfer or promote a person who is less qualified over a person who is more qualified on the basis of properly validated employment selection devices within the meaning of the Uniform Guidelines on Employee Selection Procedures (1978), 43 Fed. Reg. 38290 (Friday, August 25, 1978) [hereinafter Uniform Guidelines].

3.  In order to establish a list of qualified applicants for entry level positions, defendants may administer a written examination as well as a physical agility test on a pass-fail basis; for the purpose of establishing a list of qualified

candidates for promotional positions, defendants may admini-
ster written examinations on a pass-fail basis. Neither the
written or physical examinations may, however, be used as a
defense for failure to meet the goals set out in paragraph 2,
above, and in no event shall defendants use any standards or
selection procedures in evaluating the fitness of candidates
for positions within the sworn ranks of the CPD which are
inconsistent with the achievement of the goals in paragraph 2
or which have the purpose or effect of limiting the employment
opportunities of blacks or women.

    4. Defendants shall provide to plaintiff within thirty
(30) days of entry of this Decree a list of all disqualifying
factors for employment as a police officer and a list of those
factors which are not automatically disqualifying, but which
are considered in evaluating an applicant's character or suit-
ability for employment. These lists may be amended and
supplemented from time to time as necessary to correct over-
sights, to make adjustments required by changing circum-
stances, or to prevent injustice. Plaintiff shall review
these factors and notify the CPD of its position as to the
validity of these considerations. Approval or acquiescence of
plaintiff in the use of factors which are not automatically
disqualifying shall not be deemed to be approval of the manner
in which the factor may be utilized with respect to any parti-
cular individual.

    5. No additional appointments shall be made from
existing eligibility lists for positions covered by this
Decree and said lists shall be deemed to have expired for all
purposes with the entry of this Decree, unless the defendants
can show that continued use of the list will allow compliance
with the interim goals established in this Decree.

    Before establishing any eligibility list for the position
of police officer, police specialist or police sergeant, the

defendants shall determine whether, based on estimated hiring during the life of the list and the race and sex composition of the list, the CPD will be able to meet its interim hiring goals from that list. Should compliance not be reasonably expected given the composition of the list, the defendant's shall immediately notify the plaintiff in writing of the matter, specifying all relevant details, including a copy of the list, with candidates identified by race and sex, and the number of anticipated appointments over the life of the list. The affected parties shall then meet within a reasonable period to discuss alternative methods by which the CPD can meet its goals.

6. Defendants shall make all good faith efforts, consistent with the needs of the CPD, to place black and female officers in specialized job assignments where they have not previously been represented.

7. Defendants shall retain for a period of five (5) years all records relating to the recruitment, selection, appointment, promotion, training, assignment and discipline of persons covered by this Decree, including applications, identified by race and sex, as set forth in Section 4 of the Uniform Guidelines, supra; all medical and background investigation files, training evaluations, evaluations of applicants and employees, eligibility lists and appointments, with persons identified by race and sex; and all records relating to discipline and discharge. Plaintiff shall have the right to inspect any and all such documents upon reasonable notice to defendants without further order of this Court. In addition, defendants shall make available such information or records as plaintiff requests in writing, provided such requests shall not be unduly burdensome.

8. For purposes of this Decree, a reporting period shall run from July 1 through December 31 and from January 1 through June 30 for each year. Thirty (30) days after the close of each reporting period defendants shall provide to

plaintiff:

(a) The number of persons by race and sex applying for sworn positions in the CPD during the reporting period and the number by race and sex who passed and failed each step of the selection process thereafter, previous to appointment.

(b) The number of persons by race and sex, appointed or promoted to each sworn position in the CPD during the reporting period.

(c) Copies of each eligibility list established for sworn positions during the reporting period, with persons identified by race and sex.

(d) The name, address, telephone number, race and sex of each person terminated or who resigned from a sworn position during the reporting period, and a statement of the reasons for termination or resignation.

(e) The total number of persons in each job classification in the CPD by race and sex as of the close of the reporting period.

(f) An estimate of the number of appointments to sworn positions anticipated by the CPD in each sworn job classification during the next reporting period.

Defendants shall also provide to plaintiff, within forty-five (45) days of the entry of this Decree, a report showing the number of persons by race and sex, in each sworn rank of the CPD as of June 1, 1980.

9. At any time after five years from the date of this Decree, defendants may notify plaintiff with sixty (60) days notice, of their desire to terminate this Decree; and upon showing of achievement of the goals of this Decree, it shall be terminated. Absent such a showing, this Decree shall be extended and if necessary amended, to serve the purposes of justice and achievement of the goals of this Decree.

Entered this 8th day of July, 1980.

UNITED STATES DISTRICT JUDGE

Agreed:

JAMES C. CISSELL
United States Attorney

RICHARD A. CASTELLINI
City Solicitor

ANN MARIE TRACEY
Assistant Unites States
     Attorney

PAUL R. BERNINGER
Assistant City Solicitor
City of Cincinnati
City Hall
Cincinnati, Ohio  45202

DAVID L. ROSE
KATHERINE P. RANSEL
     Attorneys
     Department of Justice
     Washington, D.C.  20530

Exhibit 2



COURT OF COMMON PLEAS
HAMILTON COUNTY

| | | |
|---|---|---|
| SENTINEL POLICE ASSOCIATION, | : | CIVIL ACTION NO. A8704567 |
| | : | (Niehaus, J.) |
| and | : | |
| ARTHUR HARMON | : | |
| BURNETT WILLIAMS | | |
| JERRY KYLES | : | |
| GEORGE EDMONDS | | |
| LONNIE MICHAEL COTTON | : | |
| FREDDIE F. STONESTREET | | |
| RONALD TWITTY | : | |
| and | | |
| LEYNORICE JOHNSON | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| CITY OF CINCINNATI, | | CONSENT DECREE |
| Defendant | : | |
| and | : | |
| QUEEN CITY LODGE NO. 69, | : | |
| FRATERNAL ORDER OF POLICE, | | |
| HAMILTON COUNTY, OHIO, INC. | : | |
| Defendant-Intervenor | : | |
| | : | |

ENTERED
SEP 14 1987
IMAGE 157

Plaintiffs in this action have alleged unlawful
discrimination against blacks and females within the Cincinnati
Police Division. In order to avoid time consuming and costly
litigation and in order to continue ongoing efforts to
insure equal promotional opportunity within the Cincinnati Police
Division, however, the parties have agreed to resolve all claims
raised in this case by entering into this consent decree
including claims for costs and attorney fees. This decree shall

not constitute an admission, adjudication, or finding on the merits of the case, and the defendants deny that any unlawful discrimination has occurred.

The following facts are stipulated :

a.   Twenty-six lieutenants or 67% of the total number of lieutenants in the Division were appointed from the latest police lieutenant promotion eligible list. Twenty-five of those promoted were white males and one a white female. That list expired June 25, 1987.

b.   All twenty-six promotions to the rank of lieutenant were made pursuant to the applicable provisions of R.C. 124.44, and in accordance with Section 10, Article XV, of the Ohio Constitution.

c.   Six qualified blacks were on the list but were not promoted to the rank of lieutenant by the time the list expired.

d.   The current promotion eligible list for police captain was to expire on July 11, 1987, but was extended by the court and is to expire at 12 o'clock noon on September 14, 1987.

e.   Nine captains or 64% of the total number of captains in the Division have been promoted from the current list and all of those promoted have been white males.

f.   All nine promotions to the rank of captain were made pursuant to the applicable provisions of R.C. 124.44, and in accordance with Section 10, Article XV, of the Ohio Constitution.

g.   Two qualified blacks are on the list but unlikely to be promoted to the rank of captain by the date the list will expire.

h.   No blacks or females have been promoted to the ranks of captain or lieutenant colonel and no blacks and only one female have been promoted to the rank of lieutenant since August 13, 1981.  There are currently no black or female lieutenant colonels; no black or female captains; and only one female and two black lieutenants within the Cincinnati Police Division. Blacks and females have been underrepresented and currently remain underrepresented in the promoted ranks of the Cincinnati Police Division covered by this decree.



ENTERED
SEP 1 4 1987
IMAGE /58

i.   The large number of new promotions to the ranks of
     captain and lieutenant have reduced the possibility of
     openings in those ranks in the near future.  Unless
     affirmative action is practiced with respect to
     promotions in those ranks, the manifest imbalance
     existing with respect to blacks and females in those
     ranks and at the rank of lieutenant colonel will
     continue to be present.  There is a need for an
     affirmative action remedy.

j.   It is the purpose and intent of the decree to insure
     that blacks and females are not disadvantaged by
     promotion practices within the City of Cincinnati and
     that any disadvantage to blacks and females which may
     have resulted from any past discrimination be remedied,
     in accordance with the specific terms of this consent
     decree, so that equal promotional opportunity is provided
     to all.

k.   The double-fill system provided for herein is intended
     to be limited in duration; utilized only as set forth herein
     only when the normal promotional system does not result
     in sufficient promotions of blacks and females to the
     ranks affected; is statistically well-grounded; and has
     a minimal impact on the civil service and other rights
     of officers not benefiting from the double-fill system.

     The long term goal of this decree is to achieve, subject to

the availability of qualified applicants, a proportion of

qualified blacks and females in the sworn ranks of police

lieutenant, police captain, and assistant police chief

(lieutenant colonel) in the Cincinnati Police Division equal to

the proportion of qualified blacks and females in the labor force

of the City of Cincinnati.

     It is hereby ORDERED, ADJUDGED AND DECREED, with agreement

of all parties:

     All positions to be filled in the ranks above
     sergeant and below police chief in the Cincinnati
     Police Division shall be filled by rank order
     promotion from the applicable eligibility list with
     the following exceptions:

     In the event that the results of the grading of any
     promotional examination results in the release of a



ENTERED
SEP 14 1987
IMAGE 159

3

promotion eli\_ble list which fails to a\_ure promotions of qualified blacks and females at a level consistent with an interim goal of approximately 25% of the vacancies, then the City defendant shall establish and fund such required additional positions and promote such additional blacks and females in rank order from the existing promotion eligible list as are required to fulfill the interim goal.

Subsequent to the release of the next promotion eligible lists for the ranks of police lieutenant, police captain and assistant police chief (lieutenant colonel) in accordance with the terms of this Decree, the required compliment for those ranks shall be determined by the city defendant and a "Notice of Complement" shall be prepared and posted on all bulletin boards in all police locations, no later than one hundred twenty (120) days prior to the expiration of the existing promotion eligible list. Said "Notice of Complement" shall set the authorized complement of each rank effective the day after the expiration of the current eligible list.

All positions in the ranks of specialist, lieutenant, captain and assistant chief of police (lieutenant colonel) that are established and funded pursuant to the provisions of this decree in addition to those in the established complement for that rank shall be considered double-fill complement positions in existence at the time of the release of the "Notice of Complement" by the City defendants; provided, however, that after the expiration of any existing promotion eligible list, a vacancy for promotion purposes shall not exist in the complement until such time as the total number of persons holding the rank of specialist, lieutenant, captain, or assistant police chief (lieutenant colonel) falls below the complement established by the "Notice of Complement".

Within the interim goal of promoting blacks and females to approximately 25% of the vacancies in the designated ranks above police sergeant, qualified blacks and females shall be promoted first, in rank order, and second, in a manner that reflects their proportionate representation in the ranks eligible for those positions in relation to each other. For example, if among black and female candidates for promotion the rank order is:

     1st, white female A
     2d,  black A
     3d,  white female B
     4th, black B
     5th, black C
     6th, black D
     7th, black E



ENTERED
SEP 14 1987
IMAGE 16 D

4

and the proportion of blacks to females in the ranks
eligible for those positions is 4:1, double fill
promotions shall be made as follows:

        1st, white female A
        2d,  black A
        3d,  black B
        4th, black C
        5th, black D
        6th, white female B
        7th, black E

It is understood and agreed that this provision shall
not be interpreted so as to alter the method the City
has utilized in the past in promoting blacks and
females to double-fill positions created by the
existing federal consent decree [USA v. City of
Cincinnati, U.S.D.C., S.D. OH., No. C-1-80-
369] relating to the ranks of specialist and sergeant.
By consenting to the use of this method in this
decree, the Sentinels and the individual plaintiffs
are not consenting to the use of this method under
the federal decree.

The provisions of this decree do not apply to the
position of chief of police. However, the City
should seek to apply affirmative action in an effort
to promote qualified blacks and/or females to that
position in a manner consistent with state civil
service laws.

This decree shall be implemented immediately,
including application of the decree to the current
captain promotion eligible list. For the current
captain list only the city shall promote in rank
order two white lieutenants to double fill
positions as police captains at the same time it
promotes the two black lieutenants to double fill
positions as police captains.

For the next lieutenant promotion eligible list only,
the interim goal shall be adjusted upward so as to
result in double fill promotions to the rank of
lieutenant in rank order on a ratio of one black or
female (pursuant to the guidelines at the bottom of
page four and top of page five) for every white male
promoted to a regular complement position as police
lieutenant.



During the life of the next lieutenant promotion
eligible list only, the city shall promote in rank
order seven police officers to double fill positions
as police specialists at the same time double fill
positions are filled under this decree at the ranks
of captain and lieutenant. No more than seven double

5

fill specialist positions shall be created under this provision. Double fill specialist positions created under this provision shall be in addition to, but counted as regular complement positions for the purpose of determining double fill specialist promotions to be established during this period under the decree in <u>USA v. City of Cincinnati</u>, U.S.D.C., S.D.OH., No. C-1-80-369.

Vacancies caused by the promotion of the two black lieutenants and two white lieutenants on the current captain promotion eligible list, as well as all vacancies created as the result of the one year double-filling requirement in the rank of police lieutenant, and all other vacancies in the sworn ranks of the police division created during the life of the next lieutenant promotion eligible list shall be filled promptly by promotions to or from all applicable lower ranks in the Cincinnati Police Division.

The promotion eligible lists for ranks above sergeant in the Cincinnati Police Division shall be valid for one (1) year or until the list is exhausted, whichever shall occur first. The complement of positions for the ranks of police specialist, sergeant, and lieutenant shall remain fixed and not be reduced until the expiration of the next lieutenant promotion eligible list following the entry of this decree. The approved and funded complement for each rank for the purpose of this provision is captain, 14, lieutenant, 39, sergeant, 120*, and specialist, 138.

[*Subject to final decision in <u>Smith et.al. vs. City of Cincinnati, et al.</u>, USDC, CASE NO. C-1-87-0381.]

After expiration of the next lieutenant promotion eligible list, complement strength in all ranks shall be determined by the appointing authority or its designated representatives in a manner consistent with state civil service laws and the "Notice of Complement" requirements of this decree.



ENTERED
SEP 14 1987
IMAGE 162

In the event that the authorized complement for the rank of captain should be reduced prior to expiration of the next lieutenant promotion eligible list, resulting demotions and layoffs shall be made according to seniority consistent with <u>Stotts v. Firefighters</u>, 104 S. Ct. 2576 (1984).

Plaintiffs shall dismiss the motion to intervene and for enforcement of the consent decree and the appeal they have initiated

in the United States District Court, Southern District of Ohio, Western Division, in Case No. C-1-80-369, and in the United States Court of Appeals, Sixth Circuit, in Case No. 87-3475, and all parties hereto expressly waive any right they may have to recover damages, costs or attorney fees through this date in either of those two proceedings or in the instant action. The Fraternal Order of Police, Queen City Lodge No. 69, agrees to dismiss the pending grievance concerning the alleged negotiations between the Sentinels and the City.

This court shall retain continuing jurisdiction of this action.

Judge

Entered this 14th day of September 1987.

JUDGE RICHARD A. NIEHAUS

AGREED:

DATE:

Alphonse A. Gerhardstein
Trial Attorney for Plaintiffs

John H. Burlew
Attorney for Plaintiffs

M. Kathleen Robbins
Trial Attorney for Defendant City of Cincinnati

Donald E. Hardin BY: JAY HILL H329
Trial Attorney for Defendant-intervenor
Queen City Lodge No. 69,
Fraternal Order of Police

ENTERED
SEP 14 1987
IMAGE 163

7

## VERIFICATION

Pursuant to 28 U.S.C. 1746, I, Eric Kohler, declare under penalty of perjury that I have read the foregoing Verified Complaint, that I am competent to testify in this matter, that the facts contained therein are true and correct, and are based information personally known and observed by me

Executed on ___10/29/20___ .

Eric Kohler