# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ERIC KOHLER,  
     Plaintiff,

vs.

CITY OF CINCINNATI, et al.,  
     Defendants.

Case No. 1:20-cv-889  
Dlott, J.  
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

## I. Introduction

Plaintiff Eric Kohler is a white, male resident of the State of Ohio and City of Cincinnati

(City) who is currently employed as a Sergeant with the City police department.  Kohler brings

this action under 42 U.S.C. §§ 1983, 1985 and 1986 for violations of his civil rights.[1]  He names

as defendants the City, a chartered municipality within the State of Ohio that maintains the City

police department; John Cranley, the Mayor of Cincinnati who purportedly has oversight,

control, and supervision of the actions alleged in the complaint; the United States of America, a

party to one of the two consent decrees at issue in this action; and Unknown Defendants 1-10,

individuals employed by the City and other non-employees who allegedly retaliated against

plaintiff, or conspired to retaliate against plaintiff, for filing this lawsuit.

Plaintiff initially filed a verified complaint in this matter on November 4, 2020.  (Doc. 1).

Plaintiff filed an amended verified complaint on January 8, 2021.  (Doc. 26).  Plaintiff challenges

the ongoing enforcement of two consent decrees in this lawsuit.  The first consent decree, as

amended, was entered in this district court in 1981 in the case of *United States of America v. City*

*of Cincinnati, et al.*, No. 1-80-369 (S.D. Ohio) (1981 Consent Decree).  (*See* Doc. 26 at PAGEID

---

[1] Plaintiff sues on behalf of a putative class, but no class has been certified to date.

289-09, 304-150).  Both the United States and the City are parties to that consent decree.  The second consent decree was entered in the Hamilton County, Ohio Court of Common Pleas in 1987 in the case of *Sentinel Police Association, et al., v. City of Cincinnati*, No. A 8704567 (1987 Consent Decree).  (*Id*. at 290, 316-323).  The City is a party to the 1987 Consent Decree, but the United States is not.  Both consent decrees contain sex- and race-based criteria for hiring and/or promoting individuals in the City's police department.

Plaintiff brings four claims for violations of his constitutional rights based on continued enforcement of the consent decrees.  First, plaintiff brings a claim for violation of his equal protection rights.  He alleges the consent decrees require the City and Mayor Cranley to treat plaintiff less favorably than similarly-situated individuals due to the race or sex of such individuals; the consent decrees do not withstand strict scrutiny to the extent they classify and discriminate against individuals based on race because they do not serve a compelling government interest and are not narrowly tailored to serve a government interest; and the consent decrees do not withstand intermediate scrutiny to the extent they classify and discriminate against individuals based on their gender because they do not serve an important governmental objective and are not substantially related to the achievement of any government objective. (Doc. 26, ¶¶ 50-54).

Second, plaintiff brings a claim for First Amendment retaliation.  Plaintiff alleges he engaged in protected speech and petitioned for redress of grievances by filing this matter on November 4, 2020.  He alleges the City, Mayor Cranley, and Unknown Defendants 1-10 have taken adverse actions against him and have failed to provide redress for threats against him by minority officers, women officers, and supervisory personnel.  Plaintiff alleges these threats were motivated at least in part by his protected conduct and include reducing his seniority, thereby

depriving him of significant, tangible employment benefits (*see* ¶¶ 19, 20, 57), and threatening him and his livelihood. (*Id.*, ¶¶ 57).

Third, plaintiff claims the City engaged in a conspiracy to violate his civil rights under §§ 1983 and 1985 and to deprive him of equal protection. Plaintiff further claims all defendants but the United States have conspired to conduct a pattern of retaliation by conducting an in-depth review of his service record to deprive him of a promotion; fostering an ongoing pattern of harassment; and subjecting him to scrutiny with an eye toward ending his employment. Plaintiff claims that Unknown Defendants 1-10 have communicated with City personnel to further the object of their conspiracy and to help defendants defend and defeat this lawsuit, and they "have conducted meetings to plot retaliatory measures against" plaintiff. (*Id.*, ¶ 67). For his fourth claim, plaintiff alleges that these same defendants violated his civil rights under § 1986 by failing to prevent the wrongs they conspired to commit. Plaintiff claims that defendants knew of the wrongs they allegedly conspired to commit as alleged in Count III, but defendants neglected and refused to stop the wrongs. (*Id.*, ¶ 71).

Plaintiff seeks relief which includes a declaration that the challenged orders, customs, and practices are unconstitutional; a permanent injunction to prohibit enforcement of the "challenged orders, customs and practices against all Defendants and injunctive relief restoring Plaintiff Kohler to the date of seniority he would have without the challenged practices, and further injunctive relief against the City, Mayor, and Unknown Defendants 1-10, preventing further retaliation"; and compensatory damages against the City defendants and Unknown Defendants 1-10 that includes "(i) lost pay from the time that Officer White was promoted to Sergeant ahead of Plaintiff until that time that Plaintiff was promoted, estimated to be in the range of $640; (ii) lost overtime pay from the time that Officer White was promoted to Sergeant ahead of Plaintiff until

the time that Plaintiff was promoted, estimated to be in the range of $240; and (iii) loss of seniority and other benefits stemming therefrom" (*Id.*, ¶ 54).[2]  (*Id.* at PAGEID 298).

## II.  Motion for preliminary injunction

On November 18, 2020, two weeks after he had filed the original complaint and two months before he filed the amended complaint on January 8, 2021, plaintiff filed a motion for preliminary injunction.  (Doc. 7).  The Court heard oral arguments on the motion on February 18, 2021.[3]  Plaintiff seeks to enjoin the City and Mayor Cranley from "enforcing the Consent Decree[s] . . . and any race or gender quotas for promotion or hiring" during the pendency of this action.  (*See* Doc. 7-1 at PAGEID 64).  The matter is before the Court on the preliminary injunction motion and the City and Mayor Cranley (City defendants)'s response in opposition (Doc. 22); the United States' corrected response in opposition (Doc. 28); plaintiff's reply in support of the motion (Doc. 31); the United States' sur-reply in further opposition to plaintiff's motion (Doc. 36); and plaintiff's notice of supplemental authority (Doc. 38).

### A.  Facts

The facts relevant to plaintiff's request for a preliminary injunction are largely undisputed, except where otherwise noted.

The stated purpose of the 1981 Consent Decree is "to insure that blacks and women are not disadvantaged by the hiring, promotion, assignment and other employment policies and practices of the [Cincinnati Police Department] and that any disadvantage to blacks and women which may have resulted from past discrimination is remedied so that equal employment

---

[2] The benefits and pay plaintiff allegedly lost also specifically include "preferential job assignments" and "regular and detail" pay.   (*Id.*, ¶ 38).

[3] The parties did not present witness testimony or exhibits at the oral hearing.  They rely on the documents attached to their briefs as evidence to support their respective positions.  Plaintiff also relies on the allegations of his verified amended complaint.

opportunity is provided to all." (Doc. 26 at PAGEID 306, 1981 Consent Decree, ¶ 2). The stated purpose of the 1987 Consent Decree is to "insure that blacks and females are not disadvantaged by promotion practices within the City of Cincinnati and that any disadvantage to blacks and females which may have resulted from any past discrimination be remedied . . . so that equal promotional opportunity is provided to all." (*Id*. at PAGEID 318, 1987 Consent Decree, ¶ j). To achieve their stated purposes, both consent decrees contain sex- and race-based criteria for hiring and/or promoting individuals in the City's police department. The 1981 Consent Decree applies these criteria to new hires and promotions to the position of Sergeant. (*Id*. at PAGEID 307, 1981 Consent Decree ¶ B). The 1987 Consent Decree applies these criteria to promotions to the positions of Lieutenant, Captain, and Assistant Chief. (*Id*. at PAGEID 318, 1987 Consent Decree). The 1981 Consent Decree set interim goals of "increasing the representation of blacks and women in the sworn entry rank of police officer. . . [to] thirty-four (34) percent black and twenty-three (23) percent female composition of the 1980 Police Recruit List" and filling "approximately twenty five (25) percent of the vacancies for the police specialist position and . . . for the police sergeant position" with "qualified black and female candidates." (Doc. 26 at PAGEID 306). The 1987 Consent Decree set interim goals of "promoting blacks and females to approximately 25% of the vacancies in the designated ranks above police sergeant." (*Id*. at PAGEID 319).

Both consent decrees are enforced through a "rule of four" (Doc. 26, ¶ 15) or a "double fill" process, which the City applies to eligibility lists it creates for purposes of hiring new applicants and selecting individuals for promotions. (*See* Doc. 22-1 at PAGEID 153-54, Aff. of Latisha Hazell at ¶ 3)[4]. Eligibility for promotions is based on the results of a written exam, an

---

[4] Hazell is the Division Manager for Workforce Management, City of Cincinnati Human Resources Department. (Doc. 22-1, Hazell Aff. at ¶ 1).

oral board, and "other steps" which employees must fulfill before they qualify for placement on a promotions eligibility list. (Doc. 26 at PAGEID 294). The City must review the race and gender of the promoted individuals after every fourth promotion and if no women or minorities were promoted, the City must immediately promote the next qualified woman or minority from the promotions eligibility list. (Doc. 22 at PAGEID 140). In effect, the City "double fills" the fourth position by selecting the next woman or minority on the eligibility list as an additional promotion for the fourth position. (*See* Doc. 22-1, Hazell Aff. at ¶ 3).

Plaintiff Kohler was hired for the City's Police Cadet program in 1999 and was later sworn in as an officer. (Doc. 26 at PAGEID 293). Kohler took the examination for promotion to Sergeant in 2019, but he scored too low to be promoted at that time. (*Id*. at PAGEID 294). Kohler participated in the examination process for promotion to Sergeant again on March 5, 2020. (*Id*.). Plaintiff was ranked in the eighth position on the promotions eligibility list based on the results of the examination process. (Doc. 22-2 at PAGEID 155). The four top-ranked individuals on the eligibility list included a minority and a woman.[5] The next four top-ranked individuals on the eligibility list were four white males. In order of rank, those individuals were: (No. 5) Jason T. Lindsey; (No. 6) Brendon C. Rock; (No. 7) Scott A. Brians; and (No. 8) plaintiff Kohler. (*Id*.). The individuals ranked ninth through eleventh on the list were Casey Kreider, John M. Van Dyne, and Brian T. Carr, respectively, all white males. (*Id*.). Robert Alan White II, a black male, ranked twelfth on the list. (*Id*.).

White was promoted to the rank of Sergeant on July 26, 2020. (Doc. 22-1, Hazell Aff. at ¶ 6). White was promoted before Kohler and fellow officers Kreider, Van Dyne, and Carr. (Doc. 22-2 at PAGEID 155). Kohler was promoted to the rank of Sergeant on September 20,

---

[5] The four individuals in order of rank were (1) William S. Kinney; (2) Christy Brehm; (3) Ryan Parks; and (4) Jason Hubbard. (Doc. 22-2 at PAGEID 155).

2020. (*Id.*). White's promotion ahead of Kohler on July 26, 2020 was a procedural error by the City that was not consistent with its past practice of implementing the consent decree. (Doc. 22-1, Hazell Aff. at ¶ 10). Had the City adhered to its past practice, both plaintiff and White would have been promoted on the same date an opening became available, which was September 20, 2020, with White being promoted as the "double fill" for the position. (*Id.*). Instead, White was mistakenly and prematurely promoted as a "double fill" for an opening on July 26, 2020. (*Id.*). The City defendants alleged in their response to plaintiff's motion for preliminary injunction that the City was taking action to correct the error and was correcting both plaintiff and White's records to show they had the same seniority date.[6] (Doc. 22 at PAGEID 141). White's promotion date was changed to September 20, 2020, after the error which led to his premature July 2020 promotion was rectified. (*Id.*). Thus, as of December 21, 2020, it appeared that plaintiff and White would both have promotion dates of September 20, 2020 once the record was corrected.

However, the City discovered another error related to the promotion eligibility list, and this error impacted plaintiff's promotion date. The City's Human Resources Department learned that service time which should not have been credited to plaintiff due to a break in service had erroneously been credited to him. On December 30, 2020, the City's Human Resources Management Department sent plaintiff an email advising him that there had been an error in the promotion eligibility list "based on seniority" and that he had erroneously been placed higher on the list than Casey Kreider. (Doc. 26 at PAGEID 323). Plaintiff was advised that under applicable Civil Service Rules, time he had spent as a police cadet was not creditable due to a

---

[6] Defendants filed their response on December 21, 2020.

break in service before he was appointed as a police recruit. (*Id*. at PAGEID 323-24).[7]  As a result, the City adjusted the promotion eligibility list and Kreider was moved from the ninth to the eighth position on the list.  Kreider was promoted effective September 20, 2020, the date plaintiff initially had been promoted. (*Id*. at PAGEID 325).  Plaintiff was moved from the eighth to the ninth position on the list, and his promotion date was modified from September 20, 2020 to November 15, 2020. (*Id*. at PAGEID 295).  Thus, instead of plaintiff and White sharing the same promotion date of September 20, 2020, Kreider and White now shared that promotion date. Plaintiff was promoted 25 days after White and Kreider as a result of the modifications to the promotion eligibility list, the rankings, and the promotion dates.[8]

### B.  Preliminary Injunction Standard

In determining whether to issue a preliminary injunction, this Court must balance the following factors:

1.  Whether the party seeking the injunction has shown a "strong" likelihood of success on the merits;
2.  Whether the party seeking the injunction will suffer irreparable harm absent the injunction;
3.  Whether an injunction will cause others to suffer substantial harm; and
4.  Whether the public interest would be served by a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000).

The Court balances these four factors as part of a decision to grant or deny injunctive relief.  *D.T. v. Sumner Cnty. Schls.*, 942 F.3d 324, 326 (6th Cir. 2019) ("district courts weigh the strength of the four factors against one another"); *Liberty Coins, LLC v. Goodman,* 748 F.3d 682, 690 (6th Cir. 2014) (citing *Leary*, 228 F.3d at 736).  The factors should not be considered

---

[7] For purposes of the preliminary injunction motion, plaintiff concedes that his creditable time and break in service were calculated correctly.

[8] Plaintiff amended the complaint to include factual allegations about these developments (¶¶ 39-42) and a retaliation claim based in part on allegations that the City reduced his seniority in retaliation for plaintiff's protected conduct (¶ 57).

prerequisites to the grant of a preliminary injunction, with one caveat: "the irreparable harm" requirement "is indispensable," and "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *Sumner Cnty. Schls.,* 942 F.3d at 327 (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)). "If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of the lawsuit." *Id.* (citing *Friendship Materials,* 679 F.2d at 103; 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948 (3d ed. 1995 & Supp. 2019) ("Irreparable injury is '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction[.]'")). Thus, the Court is free to balance the "*extent* of an injury" against the other factors, but a court cannot grant a preliminary injunction without finding "the *existence* of an irreparable injury. . . ." *Id.* at 327. The injury must be "an 'immediate,' 'irreparable' injury that warrants the 'extraordinary remedy' of a preliminary injunction." *Id.* (quoting *Benisek v. Lamone*, -- U.S. --, 138 S. Ct. 1942, 1943 (2018); *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). In addition, the injury "'must be both certain and immediate,' not 'speculative or theoretical'" to warrant a preliminary injunction. *Id.* (quoting *Griepentrog*, 945 F.2d at 154).

"The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Because preliminary injunction hearings happen before the parties have had an opportunity to fully develop the record, "the movant 'is not required to prove his case in full at a preliminary injunction hearing.'" *Id*. at 848-49 (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir. 2007)). However, "the proof required for the

plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion. . . ." *Leary*, 228 F.3d at 739. A preliminary injunction is an extraordinary remedy that should only be granted "upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distributors,* 860 F.3d at 849 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary*, 228 F.3d at 739) ("A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.").

**B. Conclusions of law**

*1. Likelihood of success on the merits*

Plaintiff must first prove that his claims have a strong likelihood of success on the merits. While plaintiff is not required to prove his entire case at this juncture, "to establish success on the merits, a plaintiff must show 'more than a mere possibility of success.'" *Black v. Cincinnati Fin. Corp.*, No. 1:11-cv-2010, 2011 WL 1640962, at *2 (S.D. Ohio May 2, 2011) (quoting *Certified Restoration Dry Cleaning Network,* 511 F.3d at 543 (internal quotations omitted)). "A finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

Plaintiff contends he has demonstrated a likelihood of success on the merits of his claims that the 1981 and 1987 Consent Decrees violate his constitutional rights. (Doc. 7 at PAGEID 58-62). Plaintiff argues that the 1981 and 1987 Consent Decrees and the City's policies of race-based and sex-based discrimination are unconstitutional under the Sixth Circuit's four-factor analysis in *Detroit Police Officers Ass'n v. Young*, 989 F.2d 225, 228 (6th Cir. 1993) and its decision in *Cleveland Firefighters for Fair Hiring Practices v. City of Cleveland*, 669 F.3d 737,

740 (6th Cir. 2012).  (*Id*. at PAGEID 58).[9]  Plaintiff claims the Consent Decrees require the City

to treat plaintiff less favorably than similarly-situated persons based on race or sex; the

difference in treatment is not supported by a sufficiently strong government interest; and the

consent decrees are not narrowly tailored to achieve their goals.  Plaintiff does not dispute the

consent decrees were lawful when they initially took effect, but he claims that the discriminatory

practices that prompted the City to enter into the consent decrees have not impacted current

minority or female employees, who were not employed by the police department when the

discriminatory practices were occurring, and the City has remedied those discriminatory

practices.  Plaintiff alleges that the hiring and promotion targets set forth in the consent decrees

have been exceeded, and the long-term effects of prior minority/female underrepresentation in

the police department have been remedied.  (*Id*. at PAGEID 55).  Plaintiff alleges that by

continuing to enforce the consent decrees at this juncture, the City unlawfully discriminates

against white males in hiring and promotion.  (*Id*. at PAGEID 53).

Defendants argue that plaintiff has not shown a likelihood of success on the merits

because he lacks standing to pursue his constitutional claims.[10]  (Docs. 22, 28, 36).  Defendants

argue that plaintiff has not shown an injury-in-fact as required to establish standing for purposes

---

[9] *Young* set forth four factors for evaluating whether continued enforcement of a consent decree is constitutional. Plaintiff alleges that when applied to this case, the *Young* analysis shows that continued enforcement of the Consent Decrees is not constitutional because : (1) there is no longer a need for the relief set forth in the decrees; (2) the Consent Decrees are nearly perpetual in duration; (3) women and minorities constitute a significant majority of the top two ranks of the City's police department; and (4) the Consent Decrees have a significant impact on third parties, i.e., white male officers.  (Doc. 7 at PAGEID 60). Plaintiff argues that consistent with *Cleveland Firefighters*, remedying the effects of past intentional discrimination is a compelling interest but the City has failed to show any evidence of ongoing discrimination so as to justify continued enforcement of the consent decrees.  (*Id*. at PAGEID 60-62).

[10] The City defendants also argued in their memorandum, which they filed before the amended complaint that plaintiffs' claim for injunctive relief was moot because the mistakes in White and plaintiff's promotion dates were being corrected and "they both have the same seniority date."  (Doc. 22 at PAGEID 146-47).  This is no longer the case because Kreider was moved ahead of plaintiff on the promotion eligibility list and plaintiff now has a later promotion date than White.  Accordingly, as defendants premise their mootness argument on their allegations that plaintiff and White share the same seniority date, plaintiff's claims are not moot.

of obtaining a preliminary injunction.  (Doc. 22 at 143-46; Doc. 28 at PAGEID 335-40).

Defendants argue that plaintiff has not suffered an "injury in fact" because he has been promoted

to sergeant, and he is not in immediate danger of sustaining a direct injury from enforcement of

the Consent Decrees.  Defendants argue that plaintiff has not alleged a concrete injury stemming

from the Consent Decrees related to his eligibility for future promotions because any such claims

are speculative and conjectural.

In reply, plaintiff argues that he has standing to bring his claims.  (Doc. 31).  Plaintiff

alleges that implementation of the Consent Decrees through the rule of four process, by which

"the preferred candidates jump more qualified white male candidates ahead of them who are not

one of the initial four individuals promoted," has "the practical effect of delaying . . .  more

qualified white male candidates' hiring or promotion."  (*Id*. at PAGEID 367-68).  Plaintiff also

alleges "there are problems when the list expires after more qualified white males have been

jumped."  (*Id*. at PAGEID 368).  Plaintiff alleges that after several "double fills" were made and

"qualified white males" were "jumped" in the prior list, the "sergeant's test" on March 5, 2015

was delayed past the date it normally would have been given; this in turn substantially delayed

plaintiff's promotion to Sergeant; and the delay resulted in in "the promotion of additional less

qualified minority and female candidates over him."  (*Id*.).  Plaintiff alleges there are "tangible

long term employment benefits that are determined based on seniority and date of promotion," in

addition to a pay increase, as alleged in the amended complaint.  (*Id*., citing Doc. 26, ¶ 19).

Plaintiff argues that "the failure to be promoted in a race and sex neutral fashion [causes]

lingering and ongoing effects, including impacting his ability to compete for future promotions."

(*Id*. at PAGEID 368-69, citing Doc. 26, ¶¶ 19, 20).

Where, as here, "a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor." *Waskul v. Washtenaw Cnty. Community Mental Health*, 900 F.3d 250, 256 n. 4 (6th Cir. 2018) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (internal citations and quotation marks omitted).  In the preliminary injunction context, success on the merits encompasses success not only on "substantive theories" but also in establishing "jurisdiction" and "standing." *Id*. (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting in turn *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015)).  "[A] party who fails to show a substantial likelihood of standing is not entitled to a preliminary injunction . . . because [the] burden of showing a likelihood of success on the merits . . . includes a likelihood of the court's *reaching* the merits, which in turn depends on a likelihood that plaintiff has standing." *Id*. (quoting *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (internal citation and quotation marks omitted)).

Standing is jurisdictional, and the Court must address standing as a threshold matter. *Kanuszewski v. Michigan Dept. of Health and Human Services*, 927 F.3d 396, 405 (6th Cir. 2019) (citing *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017)).  The party invoking federal jurisdiction has the burden of establishing the elements of standing, which are "an indispensable part of the plaintiff's case." *Waskul*, 900 F.3d at 255 n. 3.  The plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought," whether injunctive and declaratory relief, or only damages." *Kanuszewski*, 927 F.3d at 406 (quoting *Town of Chester v. Laroe Estates, Inc.*, --U.S. --, 137 S. Ct. 1645, 1650 (2017)) (quoting in turn *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008))).  *See also Waskul*, 900 F.3d at 257 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (standing to pursue some

13

forms of relief does not necessarily confer standing to pursue "each form of [injunctive] relief sought"); *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83 (1998) (court analyzed each of the specific types of injunctive and other relief sought); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (the plaintiff had standing to pursue monetary damages but lacked standing to pursue specific type of injunctive relief)).

At the preliminary injunction stage, the district court should ordinarily "evaluate standing 'under the heightened standard for evaluating a motion for summary judgment.'" *Waskul*, 900 F.3d at 255 (quoting *Food & Water Watch,* 808 F.3d at 912). A party must establish a substantial likelihood of establishing standing to seek the very discrete and preliminary types of relief. *Id.* at 256. If the plaintiff is unable to establish "a substantial likelihood of standing" as the first prong of the preliminary injunction test, the court must deny the motion for a preliminary injunction. *Id*. at 255 n. 3 (quoting *Food & Water Watch*, 808 F.3d at 913).

The elements of standing that a plaintiff must establish are: (1) he "suffered an injury in fact"; (2) that was caused by the defendant's conduct; and (3) that is likely to be redressed by a decision in favor of the plaintiff. *Kanuszewski*, 927 F.3d at 405 (quoting *Nikolao*, 875 F.3d at 315-16). *See also Waskul*, 900 F.3d at 255 (quoting *Spokeo, Inc. v. Robins*, -- U.S. --, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). To satisfy the injury-in-fact requirement, the plaintiff must show that he has "suffered an injury in fact, which is 'concrete, particularized, and actual or imminent.'" *Kanuszewski*, 927 F.3d at 405 (citing *Shearson v. Holder*, 725 F.3d 588, 592 (6th Cir. 2013) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). To be "actual or imminent," "the harm must have already occurred or it must be likely to occur 'imminently.'" *Parsons v. U.S. Dep't of Justice,* 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan*, 504 U.S. at 560). Unless accompanied by some

"continuing, present adverse effects," the plaintiff's "[p]ast exposure to illegal conduct does not in itself show a present case or controversy *regarding injunctive relief.* . . ." *Waskul*, 900 F.3d at 255 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) (emphasis added); (citing *Renne v. Geary*, 501 U.S. 312, 320 (1991) ("[T]he mootness exception for disputes capable of repetition yet evading review . . . will not revive a dispute which became moot before the action commenced.")).

The threat of future harm can satisfy the injury-in-fact requirement if there is a "'substantial risk' that the harm will occur." *Kanuszewski*, 927 F.3d at 405 (quoting *Clapper*, 568 U.S. at 414 n.5) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010)). "'Allegations of *possible* future injury' are not sufficient." *Kanuszewski*, 927 F.3d at 405 (quoting *Clapper*, 568 U.S. at 409) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The "threatened injury must be certainly impending," and "a highly attenuated chain of possibilities" does not satisfy this requirement. *Id.* at 405-06 (quoting *Clapper*, 468 U.S. at 410).

 "Mootness is determined by examining whether an actual controversy between the parties exists in light of intervening circumstances." *WJW-TV, Inc. v. City of Cleveland*, 878 F.2d 906, 909 (6th Cir. 1989) (citations omitted).  "To satisfy the case or controversy requirement, an actual controversy must exist at all stages of review, and not simply on the date the action is initiated."  *Id.* (quoting *Rettig v. Kent City Schl. Dist.*, 788 F.2d 328, 330 (6th Cir. 1986)).

### 2.  *Plaintiff has not shown a substantial likelihood of standing*

Though plaintiff may have standing to sue the City defendants under § 1983 for any past harm he has suffered as a result of the Consent Decrees, to demonstrate standing for preliminary injunctive relief plaintiff must demonstrate either "continuing, present adverse effects" from the

past harms, *Waskul*, 900 F.3d at 256 n. 4, or "prospective harm," *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015) (citing *O'Shea,* 414 U.S. at 495-96). Plaintiff has not shown a "substantial likelihood" of standing to obtain a preliminary injunction for harm he has allegedly suffered in the past or for prospective harm that he allegedly faces.

Plaintiff alleges two types of harm stemming from the Consent Decrees. First, plaintiff argues that enforcement of the Consent Decrees led to his failure "to be promoted in a race and sex neutral fashion" and substantially delayed plaintiff's promotion to Sergeant, which has caused ongoing adverse impacts. (Doc. 31 at PAGEID 368). Plaintiff describes the ongoing impacts of the alleged delay in his promotion as the loss of a pay increase and "tangible long term employment benefits that are determined based on seniority and date of promotion," which he has identified in the verified amended complaint. (*Id*., citing Doc. 26, ¶ 19). Second, plaintiff alleges that the delay in his promotion has impacted his ability to compete for future promotions. (*Id*., citing Doc. 26, ¶¶ 19, 20). The Court discusses each type of alleged harm *infra*.

*a. Past harm with alleged ongoing impacts*

Plaintiff has not shown that his alleged "failure to be promoted in a race and sex neutral fashion" under the 1981 Consent Decree is an injury-in-fact that can be redressed by the injunctive relief he seeks in his motion. *See Parsons,* 801 F.3d at 710 (quoting *Lujan*, 504 U.S. at 560). Plaintiff's exposure to allegedly "illegal conduct" under the 1981 Consent Decree does not show "a present case or controversy *regarding injunctive relief*. . . ." *Waskul*, 900 F.3d at 255 (quoting *O'Shea*, 414 U.S. at 495-96). Assuming plaintiff was subject to unlawful, discriminatory policies under the 1981 Consent Decree, the harm he suffered is past harm. Plaintiff was promoted to the rank of Sergeant before he filed the original complaint and motion for preliminary injunction in this action. Though his promotion date was subsequently modified,

he remains a Sergeant in the police department.[11]  Because plaintiff has been promoted to Sergeant, the 1981 Consent Decree no longer has any applicability to him.  The alleged "failure to be promoted in a race and sex neutral fashion" under the 1981 Consent Decree does not confer standing for preliminary injunctive relief, absent continuing adverse impacts that present a case or controversy.  *See Barber*, 809 F.3d 840; *Waskul*, 900 F.3d at 255 (quoting *O'Shea,* 414 U.S. at 495-96).

Plaintiff alleges he has suffered ongoing adverse impacts as a result of the failure to be promoted in a race and sex neutral fashion.[12]  Plaintiff alleges that but for application of the "rule of four" under the 1981 Consent Decree, he would have been promoted on September 20, 2020, the date that White, who was ranked lower than plaintiff on the promotion eligibility list, was promoted.  Plaintiff alleges that he continues to suffer ongoing impacts of the delay which include the loss of "tangible long term employment benefits that are determined based on seniority and date of promotions."  (Doc. 31 at PAGEID 368).  Plaintiff alleges his losses include "(i) preferences for detail and overtime pay and opportunities," which can total "tens of thousands of dollars per year"; (ii) preferences and eligibility for future promotions with time in grade requirements, (iii) vacation and paid time off preferences, and (iv) preferences for shift and duty assignments."  (*See id*.).  Assuming for purposes of the preliminary injunction motion that plaintiff will continue to accrue lost wages and other benefits as a result of the alleged delay in

---

[11] Plaintiff alleges he has demonstrated ongoing harm because standing is measured from the date the suit is filed, and it is clear he was a patrol officer on the date the suit was filed because his promotion date was later modified to mid-November 2015.  (Doc. 31 at 6).  This is not accurate.  Plaintiff had been promoted to the rank of Sergeant and was a Sergeant on the date he filed the lawsuit.  His promotion date was retroactively modified later after plaintiff had filed the motion for preliminary injunction.  The modification of the promotion date does not change the Court's preliminary injunction analysis.

[12] Plaintiff has not specifically alleged or shown that female officers were promoted ahead of him due to application of the "rule of four" or any other provision of the 1981 or 1987 Consent Decree, or that he has otherwise suffered adverse impacts as a result of failure to be promoted in a "sex neutral" fashion.

his promotion, there is no present controversy regarding preliminary injunctive relief under the terms of the 1981 Consent Decree that warrant enjoining its enforcement.  *See Waskul*, 900 F.3d at 255 (the fact that damages may continue to accrue "does not in itself show a present case or controversy *regarding injunctive relief*. . . .") (quoting *O'Shea,* 414 U.S. at 495-96) (emphasis added by *Waskul*)).  As explained *supra*, because plaintiff has been promoted to Sergeant, the 1981 Consent Decree no longer has any applicability to him.  A preliminary injunction enjoining the City of Cincinnati and Mayor Cranley from "enforcing the Consent Decree[s] . . . and any race or gender quotas for promotion or hiring" during the pendency of this action (s*ee* Doc. 7-1 at PAGEID 64) would not impact the timing of plaintiff's promotion and stop lost wages and other benefits from accruing.  Even if the 1981 Consent Decree were preliminarily enjoined, there would be no change to plaintiff's promotion date as a result.  Consequently, his seniority and benefits would not be impacted insofar as they depend on the timing of his promotion.  In short, the injunctive relief plaintiff seeks could not rectify the "past exposure to illegal conduct" - i.e., plaintiff's failure to be promoted in a race and sex neutral manner - that plaintiff alleges has resulted from application of the 1981 Consent Decree.  *See O'Shea*, 414 U.S. at 495-96.  Thus, to the extent the delay in plaintiff's promotion has caused him to suffer any ongoing loss of employment benefits, plaintiff may seek to recover damages but does not have standing to pursue preliminary injunctive relief.[13]

    b.  *Prospective harm*

    Plaintiff has not shown that he will suffer any future harm as a result of continued enforcement of either the 1981 Consent Decree or the 1987 Consent Decree that gives him standing to seek a preliminary injunction.  Plaintiff does not allege that he faces a "threatened

---

[13] Plaintiff's ability to recover damages for the ongoing effects of the past delay in his promotion is discussed *infra* in connection with the likelihood of irreparable harm factor.

injury [that] is 'certainly impending,' or [that] there is a 'substantial risk' that the harm will occur." *Barber*, 809 F.3d at 849 (citing *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (quoting *Clapper,* 568 U.S. at 414 n. 5).

First, plaintiff only vaguely alleges that enforcement of the 1987 Consent Decree poses the possibility of future harm at an unknown time.  Plaintiff alleges in the amended complaint that he "intends to test for Lieutenant when eligible next" and "the State [1987] Consent Decree will or is likely to have a similar effect on him [as the 1981 Consent Decree has had on his promotion to Sergeant] at that time."  (Doc. 26, ¶ 43).  Plaintiff's theory of standing relating to his ability to test and compete for future promotions is premised on allegations that his failure to be promoted to Sergeant in a race and sex neutral manner delayed that promotion and will adversely impact his ability to compete for future promotions.  (*Id.*, ¶¶ 18, 20).  Plaintiff alleges that "[s]everal double fills that occurred in the [sergeant's promotion] list prior to the current list caused the sergeant's test to be given at [a] later date than what it otherwise would have been, thus substantially delaying Kohler's promotion to sergeant and promoting additional female and minority candidates over him."  (*Id.*, ¶ 18).  However, plaintiff's theory of standing is not supported by any evidence showing the number of double-fills that allegedly occurred in 2019 (when plaintiff failed to score high enough to qualify for a promotion); how such double-fills changed the timing of the 2020 sergeant's test under which plaintiff was promoted; and how that change in timing would affect his ability to test for a future promotion (under the 1987 Consent Decree).  Moreover, any future promotion to Lieutenant necessarily depends on plaintiff's ability to pass the exam with a score that qualifies him for the promotion.  These factors are simply too uncertain, "speculative or theoretical," and distant to warrant the "extraordinary remedy" of a preliminary injunction.  *See Sumner Cnty. Schls.*, 942 F.3d at 327.

Moreover, enjoining enforcement of the 1981 Consent Decree would not eliminate any potential future harm.  The 1981 Consent Decree applies only to new hires and promotions to the rank of Sergeant.  Plaintiff has already been promoted to the rank of Sergeant within the police department, and his seniority has been determined.  The 1981 Consent Decree has no future applicability to plaintiff.  Enjoining the City of Cincinnati and Mayor Cranley from "enforcing the Consent Decree[s] . . . and any race or gender quotas for promotion or hiring" during the pendency of this action (*see* Doc. 7-1 at PAGEID 64) would not impact the timing of a future promotion and any adverse consequences plaintiff could suffer as a result.

c. *Affirmative action cases*

Plaintiff relies on *Brunet v. City of Columbus*, 1 F.3d 390, 397 (6th Cir. 1993), for the proposition that where "as here, an affirmative action program is challenged, 'the challenger need only show that, but for the program, he would have been considered for the job, to satisfy standing requirements.'"  (Doc. 31 at PAGEID 371).  Plaintiff alleges that the lost "seniority and promotional opportunity" he has alleged confer standing.  (*Id*., citing *Brunet*, 1 F.3d at 400-403).  Plaintiff further alleges that in terms of the 1987 Consent Decree, "because [he] is in a group that seeks the benefit of equal protection, he need not show that he will be promoted" to have standing; instead, "his mere presence in a group unequally burdened by the obligation is sufficient to confer standing."  (*Id*., citing *Brunet*, 1 F.3d at 400-03, 396).

The United States acknowledges that a loss of seniority could confer standing in appropriate circumstances, but it argues that plaintiff has not alleged any specific harms stemming from his alleged loss of seniority.  (Doc. 28 at PAGEID 340 n. 6).  The United States also contends there is no allegation that plaintiff's promotional date will affect plaintiff's ability to compete for, or otherwise impact, future promotions.  (*Id*.).

20

*Brunet* and plaintiff's allegations do not support plaintiff's argument that he has standing to obtain a preliminary injunction to remedy the harm he alleges.  In *Brunet*, the Court held that male firefighter applicants had standing to challenge the validity of a consent decree which established an affirmative action plan under which two female applicants who scored lower on the eligibility examination were hired.  The Court in *Brunet* recognized that the plaintiffs had to allege an "actual" injury and not a "possible injury at some indefinite, future time" to confer standing to challenge the consent decree, and the loss must be "fairly . . . trace[able] to the challenged action and likely to be redressed by a favorable decision."  *Brunet*, 1 F.3d at 396 (citations omitted).  The Court found that one of the several plaintiffs did not satisfy "the 'imminence' requirement of the standing doctrine in cases of future injury" and any "future injury to him was speculative" because the plaintiff was not on a certified list for a new class of hires; he was not eligible for consideration at the time; and there was no indication in the record as to whether he would appear on the next certified list.  *Id*. at 398-99.  Other plaintiffs lacked standing because at the time a class was certified, the consent decree either did not adversely impact their selection for a training class or they had entered a training class.  *Id*. at 398-400. The Court did find, however, that a "diminution in employment status" caused by the plaintiffs' "loss of 'competitive status' seniority rights" (*vis a vis* the higher placement of two women on the "seniority hierarchy" by virtue of the consent decree) was "a legally cognizable injury for purposes of standing to challenge the City's hiring practices."  *Id*. at 401.  The Court held that the consent decree violated the Equal Protection rights of male applicants for entry level firefighter positions and that the only way to remedy the plaintiffs' injury was to reorder the seniority hierarchy and place the individuals on the list as they "would have been in absence of the consent decree."  *Id*. at 409, 413.

*Brunet* is inapposite to the extent the Court found the plaintiffs had standing to challenge the consent decree at issue there. In *Brunet*, the Court held that the plaintiffs were injured when the decision to hire the two women in the August 1991 class was made pursuant to the consent decree, and the plaintiffs had standing to sue for the harm resulting from that injury. *Id*. at 402. Similarly, any injury to plaintiff under the 1981 Consent Decree occurred when White was promoted ahead of him, and plaintiff may very well have standing to challenge the 1981 Consent Decree as applied to him and to sue for any harm he incurred from that past injury. But he does not have standing to pursue that relief by way of a preliminary injunction, and the decision in *Brunet*, which did not address standing for such relief, does not support a contrary finding. Nor does *Brunet* support plaintiff's claim of standing based on possible future injury under the 1987 Consent Decree to the extent he alleges his future promotion to lieutenant may be delayed, which is much too "speculative" to satisfy the "imminence" requirement for standing for future injury. *See Brunet*, 1 F.3d at 398-99.

Plaintiff also relies on the Sixth Circuit's decision in *Vogel v. Cincinnati*, 959 F.2d 594 (6th Cir. 1992), to support his argument that he has standing to challenge the constitutionality of the Consent Decrees as applied to him. (Doc. 31 at PAGEID 372). The Sixth Circuit held that the plaintiff in *Vogel*, who was "denied employment with the Cincinnati Police Department for a period of several months as a result of the affirmative action policy adopted by the City pursuant to the consent decree," had "standing to challenge the constitutionality of the decree as it is applied to him." *Id.* at 599. However, standing to pursue preliminary injunctive relief was not before the Court in *Vogel*. The Sixth Circuit's decision does not support plaintiff's claim of standing in the context of a preliminary injunction.

In support of his standing argument, plaintiff also relies on *Vanguards of Cleveland v. City of Cleveland*, 753 F.2d 479, 484-85 (6th Cir. 1985), *aff'd sub nom. Loc. No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986). (Doc. 38). *Vanguards* did not involve a motion for preliminary injunction. Therefore, it is not helpful to the Court's analysis here.

The cases plaintiff relies on do not change the analysis of whether plaintiff has shown a substantial likelihood of standing and therefore success on his preliminary injunction motion. Plaintiff has not shown that (1) he "suffered an injury in fact"; (2) that was caused by the defendant's conduct; and (3) that is likely to be redressed by a decision in his favor. *Kanuszewski*, 927 F.3d at 405. Absent standing, this Court lacks jurisdiction to grant plaintiff's motion for a preliminary injunction.

### 3. Likelihood of irreparable harm

Even if plaintiff were able to show a likelihood of standing, he must demonstrate that "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. Irreparable harm must be "actual and imminent" rather than "speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). If plaintiff does not face "imminent and irreparable harm," then a preliminary injunction is not warranted. *Sumner Cnty. Schls.*, 942 F.3d at 327 (citing *Friendship Materials*, 679 F.2d at 103). Monetary damages are not irreparable harm. *Sumner Cnty. Schls.*, 942 F.3d at 327; *Castillo v. Whitmer*, 823 F. App'x 413, 417 (6th Cir. 2020); *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 930 (6th Cir. 2002) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.").

Plaintiff did not directly address the likelihood of irreparable harm in the absence of a preliminary injunction in his motion.  Plaintiff simply alleged that under Sixth Circuit law, the remaining factors of the preliminary injunction test are met when a constitutional violation is found.  (*See* Doc. 7 at PAGEID 58, citing cases).  In his reply, plaintiff argues that "irreparable harm exists for any constitutional violations" (Doc. 31 at PAGEID 374)[14], which defendants dispute.  Defendants argue that plaintiff has not shown a likelihood of irreparable harm because any harm plaintiff alleges is compensable by monetary damages.  (Docs. 22, 28, 36).  The United States specifically argues that loss of seniority in and of itself is not an irreparable injury because it can be remedied by other means.  (Doc. 28 at PAGEID 343 n. 9, citing *Lander v. Montgomery Cty. Bd. of Commr's*, 159 F. Supp.2d 1044, 1059 (S.D. Ohio), *aff'd*, 60 F. App'x 598 (6th Cir. 2003) (possible entitlement to a retroactive pay increase and retroactive seniority is not irreparable as required to meet the preliminary injunction standard)); (*Id*. at PAGEID 340 n. 6, citing *Loew v. Consol. Rail Corp*., No. C84-2976, 1985 WL 23435, at *1, 3 (N.D. Ohio Feb. 14, 1985) (loss of seniority rights and preferential job assignments were not irreparable harms)). The United States contends that a delayed ability to take examinations and loss of preference for details, overtime pay, vacation, paid time off, and shift and duties assignments could be remedied in the ordinary course of litigation and do not warrant injunctive relief.  (Doc. 36 at PAGEID 396).  Defendants argue that because plaintiff has not shown that the Consent Decrees will injure him in any way during this litigation, he has necessarily failed to show an irreparable injury due

---

[14] Plaintiff cites several cases to support this proposition of law.  *See, e.g., Overstreet v. Lexington-Fayette Urb. County Govt.*, 305 F.3d 566, 578 (6th Cir. 2002); *Downing v. Life Time Fitness*, 483 F. App'x 12, 21 (6th Cir. 2012), *as amended* (May 18, 2012); *Planned Parenthood S.W. Ohio Region v. Hodges*, 138 F. Supp. 3d 948, 960 (S.D. Ohio 2015); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

to imminent future harm.  (Doc. 22 at PAGEID 148-49; Doc. 28 at PAGEID 339; Doc. 36 at PAGEID 395-396).

Plaintiff has not shown it is likely he will suffer irreparable harm if the Court does not enjoin the 1981 and 1987 Consent Decrees during the pendency of this lawsuit.  Irreparable harm is presumed in cases of constitutional violations, *Castillo*, 823 F. App'x at 417, and "the likelihood of success on the merits often will be the determinative factor" when a party files for a preliminary injunction based on a potential constitutional violation.  *Libertas Classical Assn. v. Whitmer*, No. 20-2085, 2020 WL 6886262, at *1 (6th Cir. Nov. 20, 2020) (citing *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc)) (internal quotation marks and citation omitted).  Here, though, the constitutionality of the Consent Decrees has not been decided.  Plaintiff has failed to establish standing to pursue preliminary injunctive relief.  Absent standing, plaintiff has not satisfied the first factor of the four-factor preliminary injunction test by showing a likelihood of success on the merits.  Thus, there can be no presumption of irreparable harm based on the alleged unconstitutionality of the Consent Decrees.  *See Castillo*, 823 F. App'x at 417 (declining to apply presumption of irreparable harm where the court found the challenged order before it was not unconstitutional) (citing *Am. Civil Liberties Union of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 445 (6th Cir. 2003), *aff'd sub nom. McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844 (2005) ("the first factor of the four-factor preliminary injunction inquiry - whether the plaintiff shows a substantial likelihood of succeeding on the merits - should be addressed first insofar as a successful showing on the first factor mandates a successful showing on the second factor -whether the plaintiff will suffer irreparable harm")).

Further, plaintiff has not alleged that he has suffered past or ongoing losses from the Consent Decrees that are irreparable. Plaintiff has placed a dollar amount on some of his losses, which he alleges to be: "(i) lost pay from the time that Officer White was promoted to Sergeant ahead of Plaintiff until that time that Plaintiff was promoted, estimated to be in the range of $640; (ii) lost overtime pay from the time that Officer White was promoted to Sergeant ahead of Plaintiff until the time that Plaintiff was promoted, estimated to be in the range of $240; and (iii) loss of seniority and other benefits stemming therefrom." (Doc. 26, ¶ 54). Plaintiff alleges he continues to suffer ongoing impacts which include the loss of "tangible long term employment benefits that are determined based on seniority and date of promotions." (Doc. 31 at PAGEID 368). These impacts include "(i) preferences for detail and overtime pay and opportunities, which can amount to tens of thousands of dollars per year; (ii) preferences and eligibility for future promotions that have time in grade requirements, (iii) vacation and paid time off preferences, and (iv) preferences for shift and duty assignments." (*Id*.). There is no evidence to suggest that plaintiff would be unable to recover money damages for these losses if he were to prevail on the merits of his claims, and as such the losses are not irreparable. *See Sumner Cnty. Schls.*, 942 F.3d at 327; *Castillo*, 823 F. App'x at 417. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *See Lander,* 159 F. Supp. 2d at 1062 n. 30 (citing *Sampson v. Murray,* 415 U.S. 61, 90 (1974) (quotation omitted)); *Loew,* 1985 WL 23435, at *4 ("Injunctive relief is particularly inappropriate where 'there is no evidence in this record to suggest that [the employer] would be unable to comply fully with an order for backpay and reinstatement in the event [plaintiffs prevailed].") (citation omitted). The

losses plaintiff alleges he has incurred or continues to incur as a result of defendants' application of the 1981 Consent Decree are like the types of losses found to be compensable in *Lander* and *Loew*, which also involved failure to promote and loss of seniority claims.  Those losses might entitle plaintiff to retroactive seniority and lost wages and benefits.  However, as in those cases, plaintiff has not shown that application of the 1981 Consent Decree has caused "'irreparable harm' sufficient to justify a preliminary injunction." *See Loew,* 1985 WL 23435, at *3.

Finally, plaintiff has not shown that he will suffer irreparable harm at a future time from enforcement of the Consent Decrees.  As discussed *supra*, the 1981 Consent Decree cannot be applied to plaintiff in the future because it applies only to the rank of Sergeant and plaintiff has already been promoted to that rank.  And any harm plaintiff claims he may suffer if the 1987 Consent Decree is applied to him is not irreparable because it is "speculative or theoretical" rather than "certain and immediate."  *Sumner Cnty Schls*., 942 F.2d at 327; *Castillo*, 823 F. App'x at 417 (citing *Griepentrog*, 945 F.2d at 154) (holding that "the harm alleged must be both certain and immediate, rather than speculative or theoretical").

Plaintiff has not shown the likelihood of an "immediate" and "irreparable" injury that satisfies the second factor of the preliminary injunction test.  *See Sumner Cnty. Schls.,* 942 F.3d at 327.  Plaintiff has not alleged losses that can be remedied by preliminarily enjoining enforcement of the Consent Decrees.  (*See* Doc. 7-1 at PAGEID 64).  To the contrary, his losses are compensable by money damages, and the "extraordinary remedy" of a preliminary injunction is not warranted.  *See Sumner Cnty. Schls.,* 942 F.3d at 327.  Even assuming there were a likelihood of standing, plaintiff's motion for preliminary injunction should be denied for this reason.

####    4.  *Substantial harm to others /public interest*

The third and fourth prongs of the preliminary injunction analysis - assessing the harm to the opposing party and weighing the public interest - "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff has not carried his burden to show that these factors weigh in this favor. Plaintiff did not address whether the third and fourth factors weighed in his favor in his motion for a preliminary injunction. (Doc. 7). In his reply, he argues as a general matter that "there is no harm to others where public officials must obey the Constitution." (Doc. 31 at PAGEID 375, citing cases). Plaintiff also contends as a general proposition that "it is always in the public interest to prevent the violation of a party's constitutional rights." (*Id*., citing cases). But plaintiff's generalized assertions beg the question of whether any public official has violated the Constitution in this case and whether plaintiff's constitutional rights have been violated. Those determinations must await further development of the evidence and a determination on the merits. Prior to that time, and for reasons articulated by the City defendants, a preliminary injunction may substantially harm the parties bound by the Consent Decrees and the members of the public who are served by the City police department. (Doc. 22 at PAGEID 149-50).

## III.  Conclusion

Plaintiff has not carried his burden to show that a preliminary injunction should be issued. Plaintiff has not established a substantial likelihood of establishing standing to pursue a preliminary injunction. *See Waskul*, 900 F.3d at 256 n. 4. Further, plaintiff's failure to show the likelihood of an irreparable injury in the absence of a preliminary injunction is fatal to his request for preliminary injunctive relief.

**IT IS THEREFORE RECOMMENDED THAT:**

Plaintiff's motion for preliminary injunction (Doc. 7) be **DENIED**.

Date:   2/26/2021

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ERIC KOHLER,                                  Case No. 1:20-cv-889
     Plaintiff,                          Dlott, J.
                                Litkovitz, M.J.

     vs.

CITY OF CINCINNATI, et al.,
     Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).